# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

SAMIR ABDALLAH BEN HASSINE,

   Plaintiff,

 v.

JEH CHARLES JOHNSON, et al.,

   Defendants.

_____/

Case No.  1:13-cv-01152-SKO

**ORDER GRANTING PLAINTIFF'S
MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND EXPENSES
PURSUANT TO 28 U.S.C. § 2412**

(Docket No. 24)

## I.  INTRODUCTION

On July 24, 2013, Plaintiff Samir Abdallah Ben Hassine ("Plaintiff") petitioned this Court for a de novo hearing on his application for naturalization, which had been pending with the United States Citizenship and Immigration Services ("USCIS") for nearly two and a half years. (Doc. 2.)

On April 11, 2014, Plaintiff and Defendants Janet Napolitano, Alejandro Mayorkas, Lori Scialabba, and Jeh Charles Johnson ("Defendants") filed a stipulation requesting the Court remand this matter to the USCIS (Doc. 22) for adjudication, and on April 15, 2014, the undersigned issued

an order remanding this matter pursuant to 8 U.S.C. § 1447(b) (Doc. 23).  After the remand to USCIS, on May 2, 2014, Plaintiff received his certificate of naturalization.

Presently before the Court is Plaintiff's motion for attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  (Doc. 24.)  For the reasons set forth below, Plaintiff's petition for an award of EAJA fees and costs is GRANTED in the amount of $13,388.18.

## II.   BACKGROUND

### A.   Factual Background

Plaintiff has been a lawful permanent resident of the United States since November 6, 2007.  *Id.*  In 2008, Plaintiff was interviewed by the Federal Bureau of Investigation ("FBI") regarding his attendance at local mosques, immigration status, and whether he expressed "anti-American" or "anti-West" sentiments.  *Id.*  In November 2009, Plaintiff was denied access when attempting to board an international flight with his family, and was informed by FBI agents that he was not permitted to fly on a commercial aircraft.  (Doc. 24, 2.)  Eventually, Plaintiff was permitted to fly internationally.  *Id.*

On February 3, 2011, Plaintiff, represented by counsel, submitted an application for naturalization to the USCIS pursuant to 8 U.S.C. § 1430.  (Doc. 2-1, Exh. A.)  On July 27, 2011, Plaintiff's counsel inquired to USCIS about scheduling a date for Plaintiff's naturalization interview.  (Doc. 24, 3.)  On September 27, 2011, Plaintiff received a notice that his naturalization interview was scheduled for the next day.  (Doc. 2, ¶ 25.)  However, USCIS did not send Plaintiff's counsel a copy of the notice, as required by 8 C.F.R. § 292.5(a).  (Doc. 2, ¶ 25.)  Plaintiff appeared at the naturalization interview unrepresented.  (Doc. 2, ¶ 27.)  Following the interview, a USCIS officer notified Plaintiff that he had passed the civics and English portions of the examination.  (Doc. 24, 3.)

### B.   Procedural Background

Regulations require that USCIS either issue a decision on Plaintiff's naturalization application at the interview, or schedule a second interview within 120 days of the interview, which would have been no later than January 26, 2012.  8 C.F.R. §§ 335(a), 336.1(a).  USCIS did

not issue a decision on Plaintiff's application or schedule a second interview within 120 days of the first interview.   As a result of the delay, Plaintiff petitioned this Court to adjudicate his naturalization application on July 24, 2013.  (Doc. 2.)  Plaintiff initially requested that the Court conduct a hearing and adjudicate the naturalization application de novo, rather than remanding the matter to the USCIS.   Plaintiff believed his naturalization application would be subject to additional lengthy delays if remanded to the agency because he suspected his application was associated with the Controlled Application Review and Resolution Program ("CARRP").  (Doc. 2, 2.)

While Plaintiff's petition for review in this Court was pending, USCIS issued a notice of second interview for August 23, 2013.  Plaintiff's counsel responded to USCIS explaining that, because Plaintiff had petitioned the district court for naturalization determination, USCIS lacked jurisdiction to adjudicate Plaintiff's application pursuant to 8 U.S.C. § 1447(b).

On April 11, 2014, the parties resolved the district court action by stipulating to remand the case to USCIS to adjudicate Plaintiff's naturalization application; the stipulation also specified that the agency would re-interview Plaintiff within 30 days and adjudicate his application within 45 days.  (Doc. 22.)

On April 15, 2014, the Court approved the parties' joint stipulation, incorporating the terms agreed to by the parties.  The order specified as follows:

1) USCIS would set an interview date for Plaintiff on his naturalization application within 30 days of the remand Order, and adjudicate the naturalization application within 45 days;

2) The scope of the interview was limited on remand to "the sole purpose of updating the information in Plaintiff's previously filed naturalization application, including following-up on or clarifying any such responses, in order to make a prompt determination on the merits of that application" and precluding the re-administration of the English and Civics portion of the test;

3) The Court would retain jurisdiction over the matter in the event USCIS did not timely adjudicate the naturalization application or denied the application;

1  4) The deadline for any EAJA fee application was controlled by 28 U.S.C. §

2  2412(d)(1)(B), not Local Rule 54-10; and

3  5) The Order constituted a "final judgment" for purposes of calculating the EAJA

4  deadline.

5  (Doc. 23, 2-3.)   On May 2, 2014, USCIS interviewed Plaintiff, approved his naturalization

6  application, administered the oath of allegiance, and issued a certification of naturalization.

7  On July 8, 2014, Plaintiff filed a motion for attorneys' fees under the EAJA, which is now

8  before the Court.  (Doc. 24.)  Defendants filed an opposition on September 10, 2014 (Doc. 28),

9  and Plaintiff filed a reply on September 15, 2014 (Doc. 29).

10  ### III.   DISCUSSION

11  Plaintiff moves for attorneys' fees pursuant to the EAJA asserting he was the prevailing

12  party, and Defendants' position was not substantially justified.  (Doc. 24, 8.)  Defendants argue

13  that Plaintiff was not a prevailing party, and their position was substantially justified.

14  **A.**     **Legal Standard**

15  Pursuant to the EAJA, a court shall award to a prevailing party, fees and other expenses

16  incurred by that party in any civil action brought by or against the United States, unless the court

17  finds that the position of the United States was substantially justified or that special circumstances

18  make an award unjust.  28 U.S.C. § 2412(d)(1)(A).  The party seeking an award of fees and other

19  expenses must submit an application showing that it is a prevailing party and state the "amount

20  sought, including an itemized statement from any attorney or expert witness representing or

21  appearing on behalf of the party stating the actual time expended and the rate at which fees and

22  other expenses were computed."  *Id.*  Finally, the party "shall also allege that the position of the

23  United States was not substantially justified."  *Id.*  The burden then shifts to the United States to

24  show its position was substantially justified.  *Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir. 1988).

25  **B.**     **Plaintiff is a "Prevailing Party"**

26  A prevailing party is one who has obtained a judicially sanctioned order (evidencing

27  "judicial *imprimatur*") that creates a material alteration of the legal relationship of the parties.

28  *Buckhannon Bd. and Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S.

598, 604 (2001).   A material alteration occurs when a defendant is required to do something directly benefitting a plaintiff that it otherwise would not have had to do.  *Carbonell v. I.N.S.,* 429 F.3d 894, 900 (9th Cir. 2005).  The judicially sanctioned order creating the material alteration need not be a judgment on the merits; litigants who achieve relief other than a judgment on the merits or a consent decree are prevailing parties.  *Id*. at 899-901.  A stipulated remand adopted by the court in a subsequent order constitutes a judicially sanctioned order and meets *Buckhannon*'s requirement to confer prevailing party status.  *Id*. at 900.

The parties here filed a stipulation requesting remand of the matter to USCIS, which required Defendants to interview Plaintiff within 30 days of the remand order and adjudicate his naturalization application within 45 days.  (Doc. 22, 1-2.)  The Court issued an order approving the stipulated request for remand, and retained jurisdiction over the matter if USCIS did not comply with the 45-day requirement.  (Doc. 23.)  As a result of the stipulation and order, Defendants were required to interview Plaintiff and adjudicate his petition within 45 days of the remand.  Since Defendants were under no such obligation prior to entering into the stipulation, Plaintiff achieved a material alteration in his legal relationship with Defendants, which was sanctioned by the Court's order.  *Irahim v. Chertoff*, No. CIV. S-07-2415 LKK/KJM, 2009 WL 385782, at * 2 (E.D. Cal. Feb. 10, 2009) ("There was, in this case, a 'judicial imprimatur' on the changed relationship between the parties by which CIS was required to review plaintiffs' petition within sixty days.").

Defendants contend Plaintiff did not achieve a material alteration because Plaintiff's petition sought naturalization, not adjudication within a time certain, and the USCIS was not bound to any particular outcome.  (Doc. 28, 7-8.)  However, the basis for Plaintiff's suit before the district court was predicated on the agency's failure to timely adjudicate his application in the first instance. When Plaintiff successfully negotiated an agreement that USCIS adjudicate his application within a specific timeframe, he achieved one of the primary objectives of his petition – actual adjudication of his application.  For purposes of determining material alteration in status, it is irrelevant that Plaintiff *also* sought a decision from the district court on his application, the merits of which the Court never reached.  As *Carbonell* explains, a party need not obtain

affirmative relief in his underlying action to be a prevailing party.  429 F.3d at 900 ("We have held that a litigant can be a prevailing party even if he has not obtained affirmative relief in his underlying action."); *see also Rueda–Menicucci v. INS,* 132 F.3d 493, 495 (9th Cir.1997) (a petitioner who wins a remand can prevail even if he does not ultimately succeed with his claim before the agency).  To effect material alteration of the parties' relationship, Plaintiff was not required to prevail on the merits or on every type of relief sought.  *Carbonell*, 429 F.3d at 900 n.5 ("A party need not succeed on every claim in order to prevail.").

Defendants also contend that Plaintiff was not a prevailing party because the Court made no substantive rulings.  (Doc. 28, 8.)  The Court is not required to issue substantive rulings for a Plaintiff to be a prevailing party.  *See, e.g., Liv v. Keisler*, 505 F.3d 913, 917 (9th Cir. 2007) (Plaintiff was prevailing party where government moved to remand after filing of opening brief, and no judicial decision addressing the merits of the case).

Defendants further argue that 8 U.S.C. § 1447(b) is a statute of exclusive jurisdiction, and USCIS has no option for voluntary resolution of Section 1447(b) cases without some district court involvement.  Specifically, once a Section 1447(b) lawsuit is filed, the suit will resolve only with the district court (1) adjudicating and approving the application, (2) adjudicating and denying the application, or (3) remanding the action to the agency with instructions.  Essentially, there is no way for the Government to participate in a settlement that would *not* result in a judicial order.  (Doc. 28, 9.)  Defendants claim, without elaboration, that in the context of such jurisdictional exclusivity, this type of claim is distinguishable from *Carbonell*.  As noted by Plaintiff, a petitioner assured of a grant of his application in a private agreement could voluntarily dismiss his suit under Section 1447(b), and no judicial approval would be required.  The exclusivity of the jurisdiction conferred under Section 1447(b) does not weigh against finding a material alteration of the parties' relationship, despite that the result achieved came through a judicially approved joint stipulation.

Defendants finally contend that the stipulated remand order does not rise to the level of a judicial *imprimatur* because the Court "imposed no additional constraints on remand beyond those requested by the government, and that this action was purely voluntary."  (Doc. 28, 10.)   A

1   court's incorporation of the terms of a settlement agreement, however, meets the judicial

2   *imprimatur* requirement of *Buckhannon*.  *Carbonell*, 429 F.3d at 901; *Labotest, Inc. v. Bonta*, 297

3   F.3d 892, 895 (9th Cir. 2002).   "[W]hen a court incorporates the terms of a voluntary agreement

4   into an order, that order is stamped with sufficient 'judicial imprimatur' for the litigant to qualify

5   as a prevailing party for the purpose of awarding attorney's fees."  *Carbonell*, 429 F.3d at 901.

6   The Court's order here incorporated the terms of the parties' stipulation and provided the requisite

7   judicial imprimatur.

8       The stipulated remand agreement was approved by the Court and it required the agency to

9   adjudicate Plaintiff's application within a set period of time, limited the scope of the re-interview,

10  retained jurisdiction to enforce the terms of the order, and indicated that it constituted a final

11  judgment for purposes of calculating the EAJA filing deadline.  In sum, the court's remand order

12  materially altered the parties' relationship and constitutes sufficient judicial imprimatur to confer

13  on Plaintiff prevailing-party status.

14  **C.       Defendants Were Not Substantially Justified**

15      The parties also dispute whether the Government was substantially justified.   The

16  government's failure to prevail does not raise a presumption that its position was not substantially

17  justified.  *Petition of Hill*, 775 F.2d 1037, 1040, 1042 (9th Cir. 1985).  The test for whether the

18  government is substantially justified is one of "reasonableness."  *League of Women Voters of Cal.*

19  *v. FCC*, 798 F.2d 1255, 1257 (9th Cir. 1986).  Substantially justified does not mean "'justified to a

20  high degree,' but rather . . . justified to a degree that could satisfy a reasonable person."  *Pierce v.*

21  *Underwood*, 487 U.S. 552, 565 (1988).  The reasonableness of the government's position is

22  analyzed under the totality of the circumstances.  *Kali*, 854 F.2d at 332.

23      In conducting this analysis, a court "must look both to the position asserted by the

24  government in the trial court as well as the nature of the underlying government action at issue."

25  *Kali*, 854 F.2d at 332.  This inquiry "encompasses examination of the [government's] position on

26  the merits."  *Oregon Natural Res. Council v. Madigan*, 980 F.2d 1330, 1331-32 (9th Cir. 1992).

27  "'[O]bjective indicia' such as the terms of a settlement agreement, the stage in the proceedings at

28

1  which the merits were decided, and the views of other courts on the merits" may be relevant, but

2  not necessarily dispositive. *Pierce*, 487 U.S. at 568.

3      The government's position is not substantially justified where the agency violates its own

4  regulations that are clear and unambiguous. *Meinhold v. U.S. Dep't of Def.*, 123 F.3d 1275, 1278,

5  *amended*, 131 F.3d 842 (9th Cir. 1997). The government can avoid fees in such a situation only

6  where "it can prove that the regulation it violated was ambiguous, complex, or required

7  exceptional analysis." *Id*.

8      Here, Defendants violated agency regulations in adjudicating Plaintiff's application, and

9  their underlying acts at the agency-level were not substantially justified. First, USCIS violated

10  8 C.F.R. § 292.5(a) in failing to notify Plaintiff's counsel of Plaintiff's September 28, 2011,

11  naturalization interview. (Doc. 24, 16.) Section 292.5(a) unambiguously requires that

12  "[w]henever a person is required by any of the provisions of this chapter to give or be given notice

13  . . . such notice . . . shall be given by or to, served by or upon, made by, or requested of the

14  attorney or representative of record . . ." Although Defendants had previously sent Plaintiff's

15  counsel notices, Defendants concede that the notice was not sent to Plaintiff's attorney and

16  attribute the omission to "human error." (Doc. 28-2, 3.)

17      Next, Defendants acted unreasonably in failing to adjudicate the application within 120

18  days of the September 28, 2011, interview. Pursuant to 8 C.F.R. § 335.3(a), USCIS must act on

19  the application at the time of the interview or within 120 days of the interview. The USCIS here

20  did not act on Plaintiff's application at the time of the interview or within 120 days of the

21  interview.

22      Defendants contend they acted reasonably because they had a duty to resolve Plaintiff's

23  background checks prior to making any determination on the application. (Doc. 28, 15.)

24  However, regulations require that by the time of Plaintiff's naturalization interview, USCIS must

25  have completed all background checks. 8 C.F.R. § 335.2(b). Defendants offer no explanation as

26  to why the background checks were not timely completed prior to the interview. The mere fact

27  that a background check was not timely completed does not itself justify the delay. *See, e.g.*,

28  *Osman v. Mukasey*, 553 F. Supp. 2d 1252, 1257 (W.D. Wash. 2008); *Berishev v. Chertoff*, 486 F.

1   Supp. 2d 202, 207 (D. Mass. 2007) (the Government's burden to show substantial justification

2   "cannot be borne by a general appeal to delays attributable to the FBI background check process"

3   because otherwise, "the 120-day statutory window framed by 8 U.S.C. §1447(b) would be of no

4   effect"). [1]

5       In sum, because Defendants did not comply with their own agency regulations by failing to

6   notify Plaintiff's counsel of his naturalization interview and failing to timely act on Plaintiff's

7   application, their actions at the agency level were not substantially justified.   As such, Plaintiff is

8   entitled to an award of EAJA fees.

9   **D.      Reasonableness of the Requested Fees**

10      Plaintiff seeks $36,337.50 in attorney fees and costs, which includes work performed

11  by two attorneys and one law clerk. (Doc. 29, 3.)  Plaintiff requests an enhanced hourly rate of

12  $445 for the work performed by his counsel.    Although Defendants do not dispute the

13  reasonableness of the hours expended by Plaintiff's counsel, they dispute the enhanced hourly rate

14  of $445 requested for work performed by attorneys Stacy Tolchin and Trina Realmuto.  *Id.*  (Doc.

15  28, 16-17.)

16      **1.      Requested Enhanced Hourly Rates Are Neither Warranted nor Supported**

17      Under the EAJA, reasonable attorney fees are "based upon prevailing market rates for the

18  kind and quality of the services furnished, except that . . . ii) attorney fees shall not be awarded in

19  excess of $125 per hour unless the court determines that an increase in the cost of living or a

20  special factor, such as the limited availability of qualified attorneys for the proceedings involved,

21  justifies higher fee."  28 U.S.C. § 2412(d)(2)(A).  In the Ninth Circuit, the statutory maximum

22  may be exceeded if (1) the attorney had a distinctive knowledge or specialized skill, (2) which was

23  necessary for the litigation, and (3) attorneys with similar knowledge and skills could not be

24  obtained at the statutory rate.  *Pirus v. Bowen*, 869 F.2d 536, 541-42 (9th Cir. 1989).  The

25

26  ───────────────

27  [1] Although Plaintiff asserts USCIS also acted without substantial justification when it set an interview on Plaintiff's
    naturalization application during the course of the current lawsuit without any jurisdiction, it is not clear how conduct
    of the agency after Plaintiff filed suit could be considered in the substantial justification analysis.  The notice of

28  interview was not a factual basis for the lawsuit, and in light of the exclusive jurisdiction of the Court, had no legal or
    adverse effect on Plaintiff.

statutory cap may also be adjusted based on increases in the cost of living.  *Rueda-Menicucci v. I.N.S.,* 132 F.3d 493 (9th Cir. 1997).

(**a**)    **Plaintiff's Counsel Demonstrate Specialized Skill**

Plaintiff has demonstrated his counsel possess specialized skill in the field of immigration law.  Ms. Tolchin has practiced immigration law for 13 years, and is nationally recognized for her knowledge of immigration law and federal court practice.   (Doc. 24, 14.)  Ms. Tolchin routinely presents at conferences on the topic of immigration practice, and is the 2009 recipient of the Jack Wasserman award given by the American Immigration Lawyers Association for expertise in the field of immigration litigation.  *Id.*  Ms. Realmuto has practiced law for 16 years.  (Doc. 24, 17.)  Ms. Realmuto is a nationally known expert in immigration law and federal court litigation.  *Id.*  Ms. Realmuto has been working as an attorney for national immigrant rights' organizations for over eleven years, since 2003, and has provided litigation assistance to attorneys, clients and members of the public.  *Id*.

(**b**)    **Specialized Skill Was Not Necessary For This Litigation**

For purposes of awarding an enhanced rate, however, it is not enough that Plaintiff's counsel has specialized skill.  Plaintiff must show how his counsel's specialized skill or knowledge was required for the work performed on this case.  *See Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (EAJA statutory rate may be enhanced "where the attorneys possess distinctive knowledge and specialized skill that was needful to the litigation in question and not available elsewhere at the statutory rate." (internal quotation marks and citation omitted)).

Defendants assert there is nothing establishing that Plaintiff's counsel used any particularized immigration expertise in litigating this case before the Court.   (Doc. 28, 17.)  Defendants maintain any delay in processing Plaintiff's underlying application was due to delay in the background check process.   They also contend the basis for the remand was not due to Plaintiff's counsel's expertise, but because the background check was finally completed and USCIS was equipped to act on Plaintiff's application.  According to Defendants, aside from filing the petition seeking review, the actions of Plaintiff's counsel had no effect on the outcome.

1    Plaintiff argues his counsel's expertise was required to intervene when the USCIS issued a

2    notice of interview while this action was pending, contrary to controlling precedent.  Plaintiff also

3    notes his counsel was required to negotiate with Defendants to secure a timely adjudication of

4    Plaintiff's application, which had been pending for over two and a half years prior to filing the

5    petition in this court.  Plaintiff offers the declaration of Mark Van Der Hout, a specialist in the

6    practice of immigration law for the past 36 years, and former professor of immigration law at

7    Boalt Hall School of Law:

8    [t]his was not a simple naturalization delay case, as my understanding is that Mr.
     Hassine had previously been interviewed by the Federal Bureau of Investigations
9    and was on the "no fly" list. I am familiar with the "Controlled Application Review
     and Resolution Program" (CARRP), which instructs USCIS to deny or delay cases
10   immigration applications in cases where there are loose allegations related to
     national security.  In my experience, the CARRP label is overbroad and is applied
11   to many people like Mr. Hassine, who USCIS eventually recognized carried no
     national security concern whatsoever.  However, without the expertise of Ms.
12   Tolchin and Ms. Realmuto, Mr. Hassine's naturalization application would have
     been delayed indefinitely.
13

14   (Doc. 24-1, 48.)

15    Although Plaintiff's counsel was instrumental in securing a remand, the record does not

16   demonstrate this case required counsel to have a "knowledge of . . . particular, esoteric nooks and

17   crannies of immigration law . . . to give the alien a fair shot at prevailing."  *Thangaraja v.*

18   *Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005).   For example, in *Nadarajah* counsel was awarded an

19   enhanced hourly rate under the EAJA where the case involved a particularly complex set of

20   procedural circumstances and resolution required a novel and precedential interpretation of the

21   law.  *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009).   Nadarajah, an alien detained upon his

22   arrival in the United States, filed applications for asylum which were granted but appealed by the

23   government, and he remained in detained.  After being denied parole, he filed a writ of habeas

24   corpus with the district court.  After a year, the district court still had not acted on his writ.  Given

25   the delay at the district court, Nadarajah's counsel filed a petition for writ of mandamus with the

26   appellate court to compel a disposition by the district court.  After the mandamus petition was

27   filed, the district court denied the petition for writ of habeas corpus; Nadarajah withdrew the

28   mandamus petition and filed appeal of the denial of the writ of habeas corpus.  The appellate

court granted Nadarajah's motion for release pending appeal, ordered his immediate release from

detention, and ultimately reversed the district court's decision.   Upon Nadarajah's motion for

EAJA fees, the appellate court awarded an enhanced statutory hourly rate to counsel noting the

substantive complexities of the case:

> This was an unusual and complex case which required a 58-page brief and resulted
> in a significant 15-page published decision that is cited thus far in more than 70
> cases and 20 treatises or articles. [citation omitted].   The court took the fairly
> unusual step of ordering the immediate release of Nadarajah, who had been
> detained more than four years despite being granted withholding of removal at the
> administrative level.  An amicus curiae brief in support of Najarajah, addressing the
> international prohibition on prolonged and arbitrary detention, was filed by Yale
> Law School's Allard K. Lowenstein International Human Rights Clinic.  The oral
> argument was video-taped for broadcast by C-SPAN.

*Nadarajah*, 569 F.3d at 914.

The court explained it was required to apply existing law to a unique factual framework:

> [T]he court applied existing case law and statutory analysis regarding the indefinite
> detention of admissible aliens to the indefinite detention of an inadmissible alien,
> concluding that the general immigration statutes permit such detention only while
> removal remains reasonably foreseeable and that, after a presumptively reasonable
> six-month detention, if the alien provides good reason to believe there is no
> significant likelihood of removal in the reasonably foreseeable future, the
> government must respond with evidence to rebut that showing.

*Id.* at 914.  The procedural and substantive complexity of the case led the court to determine that

knowledge of esoteric nooks and crannies of immigration law was required to give Nadarajah a

"fair shot at prevailing," and thus the attorneys were entitled to an enhanced hourly rate.  *Id.*

(quoting *Thangaraja*, 428 F.3d at 876).

In stark contrast to *Nadarajah*, this case did not involve any motions or decisions on the

merits.  Rather, the government stipulated to a remand of the case after the FBI background checks

were completed.  In fact, the litigation did not even proceed to lodging of the administrative record

and the remand to USCIS was ordered after the case had been pending only 9 months.  Plaintiff

asserts USCIS attempted to schedule an interview while the case was pending before this Court,

which required counsel to apply their knowledge of the Court's exclusive jurisdiction to inform

USCIS that Plaintiff was not required to submit to such an interview during the pendency of the

1    case.  However, the Court's exclusive jurisdiction under the statutory framework is not a novel

2    issue and is well-established law.  *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004)

3    ("Section 1142(b) allows the district court to obtain exclusive jurisdiction over those naturalization

4    applications on which the NS fails to act within 120 days if the applicant properly invokes the

5    court's authority.")

6         Ms. Tolchin filed a declaration explaining that Plaintiff's application was purportedly

7    subject to the CARRP, which is a program that has "only recently been revealed to the public, but

8    which basically instructs USCIS to deny pending applications for residency or naturalization when

9    the application is a 'known suspected terrorist' or a 'non-known suspected terrorist.'"  Ms. Tolchin

10   states she is familiar with CARRP cases, she believes her specialized knowledge of CARRP was

11   essential to the litigation of the case, but concedes that the CARRP issue was "not resolved due to

12   the remand."  Thus, although CARRP may have been a *potential* issue with regard to Plaintiff's

13   application or a possible reason for the lengthy delay by USCIS prompting Plaintiff to seek

14   judicial review, knowledge of CARRP was not actually needed or exercised for purposes of the

15   litigation.  Plaintiff does not contend how CARRP would have complicated the district court's

16   consideration of the merits of Plaintiff's application under existing law – had it even reached the

17   issue.  Also, there is nothing showing CARRP was an issue that was negotiated in the parties'

18   agreement to remand for adjudication.  In sum, the record before the Court does not demonstrate

19   issues that required Plaintiff's counsel to utilize specialized skills in immigration law.

20                    **(c)      Enhanced Rate Requested is Unsupported**

21        Finally, even if Plaintiff were entitled to an enhanced rate for his counsel's services, which

22   he is not, there is insufficient evidence to support the enhanced hourly rates sought.  Plaintiff cites

23   the *Laffey* Matrix, adjusting it to reflect the "Los Angeles market rate" for his counsel.  However,

24   in calculating an enhanced rate, it must be shown that the rate requested "in line with those [rates]

25   prevailing in the community for similar services by lawyers of reasonably comparable skill,

26   experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  Here, the relevant legal

27   community is the Eastern District of California, Fresno.  *Gates v. Deukmejian*, 987 F.2d 1392,

28   1405 (9th Cir. 1992) (general rule is that rates of attorneys practicing in the forum district are used

1  to calculate the prevailing market rate); *see also Soda Mountain Wilderness Council v. Norton*,

2  No. Civ. S-04-2583, 2006 WL 2054062, at *6 (E.D. Cal. July 21, 2006).  Plaintiff has provided no

3  evidence as to the prevailing market rate for similar legal services in Fresno, California.  Thus,

4  there is insufficient evidence to award an enhanced hourly rate.

5  **2.      EAJA Statutory Rates Shall Be Awarded**

6  Although an enhanced hourly rate for Plaintiff's counsel is neither warranted nor properly

7  supported, as discussed above, Plaintiff is nonetheless entitled to attorneys' fees at the statutory

8  rate plus an adjustment for cost of living.  The statutory rate is $125 per hour; however, the EAJA

9  allows a court to adjust the statutory rate to reflect a cost-of-living increase.   28 U.S.C.

10  §2412(d)(2)(A).  The Ninth Circuit has established this increase can be calculated "by multiplying

11  the $125 statutory rate by the annual average consumer price index figure for all urban

12  consumers."  *Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005).   The Ninth Circuit

13  has published statutory maximums, adjusted to account for cost-of-living increases, for work

14  performed in the relevant years for which Plaintiff seeks attorneys' fees.  Here, the statutory

15  maximum hourly rates adjusted for the cost of living is $187.02 for 2013 and $189.79 for 2014.[2]

16  **3.      Plaintiff's Counsel's Hours Billed Are Reasonable**

17  Plaintiff submitted his counsel's billing records, and Defendants do not oppose the

18  reasonableness of the hours spent by Plaintiff's counsel.  The Court has reviewed counsel's billing

19  records and is satisfied they reflect a reasonable expenditure of time on the litigation.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27   ///

28

---

[2] *See* http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited on October 7, 2014).

**4.     Conclusion**

Accordingly, Plaintiff's petition for EAJA fees is granted as follows:

| Name and Title | Time Spent (hours) | Rates | Total |
|---|---|---|---|
| Stacy Tolchin, attorney | 7.5     (2013) | $187.02     (2013) | $1,402.65 |
| | 32.6     (2014) | $189.79     (2014) | $6,187.15 |
| **Totals** | **40.1** | | **$7,589.80** |
| Trina Realmuto, attorney | 9.2     (2013) | $187.02     (2013) | $1,720.58 |
| | 17.6     (2014) | $189.79     (2014) | $3,340.30 |
| **Totals** | **26.8** | | **$5,060.88** |
| Katie Konkel, law clerk | 4.5 | $ 75.00 | $   337.50 |
| **Totals** | **71.4** | | **$12,988.18** |

**E.     Costs**

Plaintiff seeks $400 in filing fees, which Defendants do not oppose.  (Doc. 24, 19.)  Court filing fees in the amount of $400 are reasonable and properly awarded under the EAJA.  *See Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987) (EAJA contemplates recovery for "those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried."); 28 U.S.C. § 2412(d)(2)(A).

**IV.     CONCLUSION AND ORDER**

For the reasons stated above, IT IS HEREBY ORDERED that:

1.     Plaintiff's petition for attorney's fees and expenses under the EAJA is GRANTED;

2.     Plaintiff is awarded $12,988.18 in fees and $400.00 in costs for a total award of $13,388.18; and

3.     The fee award shall be made payable to Plaintiff, and mailed to Plaintiff's counsel Stacy Tolchin at Law Offices of Stacy Tolchin, 634 S. Spring St., Suite 500A, Los Angeles, CA, 90014.

IT IS SO ORDERED.

Dated:   **October 8, 2014**                     **/s/ Sheila K. Oberto**
                                        UNITED STATES MAGISTRATE JUDGE